FIELDS *v.* JARNAGIN.

4-8042                                          199 S. W. 2d 961

Opinion delivered January 20, 1947.

*Wm. J. Kirby* and *U. A. Gentry,* for appellant.

*P. H. Dickerson, David L. Ford* and *David S. Ford,* for appellee.

ED. F. McFADDIN, Justice. The facts in this case are complicated. In 1939, appellee, Mrs. Minnie Jarnigan (a nonresident of Arkansas) was the owner of lot 10, block 105, Fitzgerald Addition to the City of Fort Smith, Arkansas, on which lot was located a house occupied by appellee's tenant. This lot was in the Sebastian County

Bridge District, and certain assessments of benefits (sometimes colloquially called "taxes") were unpaid on the lot. A foreclosure suit was instituted to collect these unpaid assessments; and on June 17, 1939, the Sebastian Chancery Court rendered a decree of foreclosure on this lot and many others. This was in suit No. 10668. At the commissioner's sale on September 11 to 13, 1939, pursuant to the said decree, this lot was sold to the Sebastian County Bridge District for $9.13, which was the total of the delinquent assessment, penalty and costs. The period of redemption allowed for property in this particular district is two years. See *Hopkins* v. *Fields*, 202 Ark. 890, 154 S. W. 2d 22; so the landowner (appellee) had until September 11, 1941, to effect a redemption.

On July 31, 1940, appellant, J. Fields, paid the collector of the bridge district the amount of $9.56, and received therefor a receipt, which reads as follows:

"No. 8502. Office of Collector of the Sebastian Bridge District, Fort Smith, Ark. July 31, 1940. Received of J. Fields $9.56. The same being the Annual Installment on account of Benefit Assessment against the following described real property in Sebastian Bridge District: Lot 10 Block 105 Fitzgerald Addition:

| | |
|---|---|
| Attorney's fee | $2.00 |
| Clerk's | 1.50 |
| Sheriff's | 0.80 |
| Commissioner's | 2.00 |
| Decree | 0.08 |
| Publishing | 0.50 |
| 2 per cent. legal penalty for redeeming | 0.45 |
| | $7.33 |

DELINQUENT TAX AND PENALTY DETAIL

| | | |
|---|---|---|
| 1937 tax | $1.88 | $7.33 |
| Penalty | 0.38 | 2.23 |
| | $2.26 | $9.56 |

MABEL PAYNE PATTON, Collector."

Undoubtedly it was Fields' intention to purchase the property from the district (as will be subsequently mentioned), but—because it showed on its face a payment of 2 per cent. for redemption—this receipt was a legal redemption receipt. In pursuance with the tenor of this receipt, the collector of the district made an endorsement on the margin of the record where was recorded the decree of foreclosure on this lot in case No. 10668; which marginal endorsement reads: "Satisfied in full, August 6, 1940." We emphasize at the outset that this satisfaction of the decree of foreclosure on this lot is extremely important to our decision in this case.

As previously stated, it was Fields' intention to purchase the lot from the district; and in pursuance of this purpose, he received from the district (on September 17, 1940) a quitclaim deed describing this lot; and he placed the deed of record. On November 5, 1940, Fields obtained an order of the chancery court (in case No. 10668) approving the quitclaim deed from the district to Fields. Then, on December 6, 1940, Fields (without payment of any additional consideration) received a deed from the chancery commissioner who had made the sale to the district. This commisisoner's deed recited that the district had quitclaimed the lot to Fields, and therefore the commissioner made the deed to Fields as grantee instead of the district. This commissioner's deed was reported to the chancery court in case No. 10668, and approved by court order on December 6, 1940. We point out that both of these court orders were made (1) during the period of redemption; and (2) after the decree had been satisfield as to this lot; and (3) without any attempt to expunge or explain the record of satisfaction.

On December 15, 1942, appellee, Mrs. Jarnagin, filed suit No. 12549 in the Sebastian Chancery Court against the Sebastian County Bridge District and J. Fields, alleging that Mrs. Jarnagin was the owner of the lot, and that the 1939 foreclosure decree was void because it was rendered without notice to her, and that Fields' claims were void for various asserted reasons—one such reason

being the marginal satisfaction of the original decree. Mrs. Jarnagin made a tender of all assessments, penalties, costs, etc., and prayed that her title be quieted. After various pleadings and amendments, Mrs. Jarnagin, on March 27, 1946, took a voluntary nonsuit in her case without prejudice. Since the dismissal was a nonsuit, it is not *res judicata* here. See *Baughman v. Overton,* 183 Ark. 561, 37 S. W. 2d 81; *Jordon v. McCabe,* 209 Ark. 788, 192 S. W. 2d 538.

In the meantime, and on August 1, 1943, Fields began collecting the monthly rental from the tenant of the property. This present suit was filed in the Sebastian Chancery Court by Mrs. Jarnagin on April 4, 1946, against Fields and the tenant of the property. In her present complaint, the appellee alleged that Fields had redeemed the property on August 6, 1940, by the endorsement of satisfaction on the margin of the record as aforesaid, and that all subsequent orders of the Sebastian Chancery Court in the previously described foreclosure suit No. 10668 were therefore void. She made tender, and prayed that her title be quieted, and that Fields should reimburse her for all rents collected, less all amounts paid by him for redemption and taxes, etc.

The cause was heard on oral evidence; and the learned chancellor prepared a written opinion which has proved most helpful to this court. The chancery court granted Mrs. Jarnagin the relief prayed; and Fields has appealed, raising here these questions: (1) Fields' purchase from the district should be treated as an assignment of the certificate of purchase which the district should have—but never—received from the commissioner in chancery; citing *inter alia,* the following cases: *Duncan v. Board of Directors,* 206 Ark. 1130, 178 S. W. 2d 660; *Crow v. Security Mortgage Co.,* 176 Ark. 1130, 5 S. W. 2d 346; *Oliver v. Gann,* 183 Ark. 959, 39 S. W. 2d 521.

(2) This present suit is a collateral attack on the court orders made in case No. 10668 approving Fields' deeds; citing, *inter alia, State v. Wilson,* 181 Ark. 683, 27 S. W. 2d 106; *Black v. Burrell,* 175 Ark. 1138, 1 S. W. 2d

805; *Dowell v. Slaughter,* 185 Ark. 918, 50 S. W. 2d 572; *Cassady v. Norris,* 118 Ark. 449, 177 S. W. 10.

(3) The case at bar is not ruled by *Ferguson v. Fields,* 208 Ark. 839, 188 S. W. 2d 302.

## Opinion

At the outset we agree with learned counsel for appellant that the case at bar is not ruled by *Ferguson v. Fields, supra.* In that case there was a dissent as to "collateral attack." Here we have a cornerstone fact which allows a collateral attack to be sustained. That fact is—as previously indicated—the endorsement of the satisfaction on the margin of the decree of foreclosure in case No. 10668. Whatever might have been Fields' intention in paying the district the $9.68 on July 31, 1940, the fact remains that he accepted a redemption certificate from the district; and, in keeping with that redemption certificate, the collector of the district on August 6, 1940, satisfied in full the decree of foreclosure on the face of the record insofar as the lot here concerned was involved. The entry of satisfaction was in accordance with § 8280, *et seq.,* Pope's Digest, which deals with the satisfaction of judgments and decrees; and § 8285 thereof says: "Satisfaction entered in accordance with the preceding provisions shall forever discharge and release the judgment or decree."

Thus, from August 6, 1940, the decree against this lot was discharged and released until the satisfaction should be set aside in a proper manner; and such satisfaction has never been set aside. In 34 C. J. 732, in discussing the fact of the entry of a satisfaction of judgment, many cases are cited to sustain these statements of the general rules:

"A satisfaction of a judgment, entered of record by the act of the parties, is *prima facie* evidence that the creditor has received payment of the amount of the judgment or its equivalent, and operates as an extinguishment of the debt and a bar to further proceedings which proceed upon the theory that the judgment remains a

subsisting obligation, except where the satisfaction was procured by fraud or without consideration or upon a condition which has not been performed, or was entered by the clerk without authority to do so. Thus, unless the case comes within such exceptions, no action lies upon a satisfied judgment, and no further execution can issue, even with the consent of the parties, until the satisfaction is vacated and a new execution awarded by an order of the court in which the judgment was rendered.''

Our own cases of *Carter* v. *Adamson,* 21 Ark. 287, and *Lewis* v. *St. L. I. M. & S. R. Co.,* 107 Ark. 41, 154 S. W. 198, are among some of the cases cited to sustain the quoted statement. In *Kennedy* v. *Eder,* 79 Ind. App. 644, 139 N. E. 372, the Appellate Court of Indiana thus stated the question and decided the point:

''The first inquiry which therefore confronts us is as to the legal effect, if any, of the entry of satisfaction of said judgment; after such entry, and while the same remained of record, could execution be rightfully issued upon such 'satisfied' judgment?

''The rule which governs in such matters is thus stated in 23 Cyc. 1495: 'The payment and satisfaction of a judgment operate to extinguish it and to put an end to its validity for all purposes whatsoever, and also to extinguish the original debt or claim, except where the satisfaction was obtained wrongfully or fraudulently, in which case, on its being revoked or vacated, the judgment will again be in force.'

''Many authorities are cited as sustaining the rule thus announced, among which see *Boos* v. *Morgan et al.,* 130 Ind. 305, 30 N. E. 141, 30 Am. St. Rep. 237; *Stout* v. *Vankirk,* 10 N. J. Eq. 78; *Cotter* v. *O'Connell,* 48 Iowa 552. In *Rochester, etc., Co.* v. *Devendorf,* 72 Hun. 622, 25 N. Y. Supp. 529, it was said: 'All of the plaintiff's claims arising out of the sale of the goods presumptively were merged in the judgment it obtained for the purchase price, and the judgment having been satisfied by the direction of the plaintiff without the intervention of an

order of the court, it was *prima facie* evidence that it was paid. . . . If for any reason the satisfaction of the judgment was voidable an order of the court vacating it should have been obtained. . . . Until set aside, the satisfaction of the judgment was *prima facie* evidence of a payment. Its legal effect is the extinguishment of the debt.' ''

The satisfaction of the decree could have been set' aside. *DeLoach Mill Mfg. Co.* v. *Little Rock Mill Co.,* 65 Ark. 467, 47 S. W. 118, 67 Am. St. Rep. 942; *Rutherford* v. *McDonnell,* 66 Ark. 448, 51 S. W. 1060; see, also, Freeman on Judgments, 5th Ed., § 1166; Black on Judgments, 2d Ed., § 1016; 31 Am. Juris. 382; and the annotation "Grounds for Vacation of Satisfaction of Judgment" in 115 Nebr. 260, 212 N. W. 431, 51 A. L. R. 243. The satisfaction could have been explained. See *State* v. *Martin,* 20 Ark. 629. But until the satisfaction is set aside, the effect of our statute—§ 8285, Pope's Digest—is to discharge and release the decree. The point here is that the satisfaction was never set aside, and remained on the face of the record as a bar to any further valid orders and proceedings until the satisfaction should be set aside. Fields cannot be heard to say that he did not know of any "redemption": because—as previously mentioned—the instrument he received from the district on July 31, 1940, showed on its face that he paid 2 per cent. for redemption.

So, all of the proceedings concerning this lot after August 6, 1940, were proceedings on a decree which showed on its face that it had been satisfied in full. Such further proceedings were therefore void by the face of the record. The situation in the case at bar is somewhat similar to that which existed in *Blanton* v. *Forrest City Mfg. Co.,* 138 Ark. 508, 212 S. W. 330. In that case a judgment attempting to decree specific performance showed on its face that the contract (which invoked the court's attempted exercise of jurisdiction) lacked mutuality. For that reason we held that the judgment was vulnerable on collateral attack. See, also, *Union Invest-*

*ment Co.* v. *Hunt,* 187 Ark. 357, 59 S. W. 2d 1039. In 31 Am. Juris. 200, in discussing when a collateral attack may be allowed on a judgment or order, it is stated:

"The rule permitting a collateral attack upon a judgment because of the absence of jurisdiction prevails where the want of jurisdiction appears upon the face of the record, or where the record affirmatively shows absence of conditions necessary to give the court jurisdiction to affect the rights of a party. In support of this rule, it has been declared that were the rule otherwise, it would never be possible to attack collaterally the judgment of a court of general jurisdiction, that the answer to the attack would always be that notwithstanding the evidence or the averment, the necessary facts to support the judgment are presumed."

The proceedings in case No. 10668 after August 6, 1940, come within the rule that judgments and orders void on their face may be attacked collaterally. *Stahl.* v. *Sibeck,* 183 Ark. 1143, 40 S. W. 2d 442; *Taylor* v. *O'Kane,* 185 Ark. 782, 49 S. W. 2d 400; *McClellan* v. *Stuckey,* 196 Ark. 816, 120 S. W. 2d 155; *Black* v. *Burrell,* 175 Ark. 1138, 1 S. W. 2d 805.

The foregoing holding necessarily results in an affirmance of the decree of the chancery court, without discussing any other questions. Fields' possession by virtue of an order void on its face, makes him chargeable with rents as a constructive trustee. Affirmed.